# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

**FILED**

MAR 1 4 2005

MICHAEL W DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| RNA CORPORATION<br>an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.   04 C 6070 |
| v. | ) | |
| | ) | |
| MOST PRODUCTS, INC., a Michigan<br>corporation, and DAVID THOMASMA | ) | Judge James B. Zagel |
| | ) | |
| Defendants. | ) | |

## MOTION FOR DEFAULT JUDGMENT

Plaintiff, RNA Corporation, an Illinois corporation, by its undersigned attorneys, moves this Court pursuant to Fed. R. Civ. P. 55(b)(2), to enter a default judgment against defendants Most Products, Inc. and David Thomasma by reason of their failure to appear, plead or otherwise defend in this proceeding following personal services upon them, and in support thereof, states as follows:

1.     On September 17, 2004, Plaintiff RNA Corporation ("RNA") filed a Complaint against Defendants Most Products, Inc. and David Thomasma seeking monetary relief, including pre-judgment interest and punitive damages.

2.     On September 30, 2004, Court Officer Garth Sewers of Grand Rapids, Michigan effected personal service on defendants Most Products, Inc. and David Thomasma by personally serving David Thomasma, who also serves as Most Products, Inc.'s President and registered agent, at 801 Burton SW, Wyoming, Michigan.  Attached hereto and made part hereof are true and correct copies of the Complaint (Exhibit A), Summons (Exhibit B), and Return of Service (Exhibit C).

3.     Pursuant to the summons served on Most Products, Inc. and David Thomasma, and pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), both defendants were required to file an answer or other responsive pleading on or before October 20, 2004.

4.     As reflected by the court record, Defendants Most Products, Inc. and David Thomasma have, to date, failed to appear or otherwise plead in response to the Summons and Complaint served upon them in this cause, and, therefore, stands in default of this proceeding.

5.     Furthermore, Defendant Thomasma has acknowledged receipt of the Complaint and has acknowledged his indebtedness to RNA as alleged in the Complaint. (*See* Affidavit of John Harms, attached hereto as Exhibit D, ¶ 20.)

6.     Defendant Thomasma is not currently in military service. (*See* Exhibit D, ¶ 7.)

7.     In light of Defendants' failure to respond to Plaintiff's Complaint, Plaintiff requests that this Court enter a default judgment against Defendants in the amount of $77,521.51, as set forth in the Affidavit of John Harms (Exhibit D), plus interest and court-related costs in the sum of $5,328.70, as set forth in the Affidavit of Frederic A. Mendelsohn (attached hereto as Exhibit E).

WHEREFORE, plaintiff RNA Corporation prays that this Court enter judgment in its favor and against defendants Most Products, Inc. and David Thomasma for the sum of $82,850.21, together with such other relief as this Court deems just and appropriate.

Respectfully submitted,

RNA CORPORATION,
an Illinois corporation

One of its attorneys

Frederic A. Mendelsohn
Bradley I. Schecter
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
Attorneys for Defendant
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611
312-840-7000
312-840-7900 (facsimile)
344767

3

Exhibit A

 RECYCLED PAPER
RECYCLABLE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RNA CORPORATION,<br>an Illinois corporation,<br><br>       Plaintiff,<br><br>    v.<br><br>MOST PRODUCTS, INC., a Michigan<br>corporation, and DAVID THOMASMA,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**JUDGE ZAGEL**

**MAGISTRATE JUDGE DENLOW**

No. **04C 6070**

JURY TRIAL DEMANDED

## COMPLAINT FOR FRAUD, STATUTORY VIOLATIONS AND OTHER RELIEF

Plaintiff, RNA Corporation ("RNA"), by its undersigned attorneys, makes the following Complaint against the defendants, Most Products Inc. ("MPI") and David Thomasma ("Thomasma"):

### COUNT I

### Parties

1.      RNA is an Illinois corporation, with its principal place of business at 13750 Chatham Avenue, Blue Island, Cook County, Illinois. RNA is, and at all relevant times was, engaged in the business of manufacturing and marketing professional health and beauty aids products. RNA manufactures many such products for other businesses under one or more trade names of such businesses, a process known as "private labeling."

2.      MPI is a Michigan corporation, with its principal place of business at 921 Wakefield Street, Plainwell, Michigan, and formerly (but during events relating to the claims herein) at 326 West Kalamazoo Avenue, Kalamazoo, Michigan. MPI is engaged in the business of manufacturing and marketing professional hair and body care products under various trade names, including

Vitiguard, Hotspell and Absolute Dark. MPI is and since 2002 has been a customer of RNA, for whom RNA manufactured private label products for resale by MPI.  MPI is a small company, with roughly six (6) employees.

3.    Thomasma is a resident and citizen of Grand Rapids, Michigan, and is and at all times relevant hereto was the President and the sole shareholder of MPI.  Upon information and belief, Thomasma has personally guaranteed certain indebtedness of MPI, which guarantees are in jeopardy as MPI is currently, and at all times relevant was, in poor financial condition and in need of liquid funds.

4.    In his capacity as President and sole owner of MPI, Thomasma enjoyed complete discretion as to whether or not to enter into business in Illinois, or to create and develop a business relationship with RNA.  In that same capacity, each and every action of Thomasma described below was made to serve his own personal interests.

**Jurisdiction and Venue**

5.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000, exclusive of costs and interest, and there is diversity of citizenship between the parties.

6.    Venue for this action is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

2

### Factual Background / Initial Agreement

7.    In or about July 2002, MPI sought to do business with RNA, and in furtherance thereof and in anticipation of revealing to RNA its formulas for various of its products, entered into a certain Confidentiality Agreement with RNA. Thomasma executed that agreement on behalf of MPI as its President. Thereafter, RNA supplied MPI, from time-to-time, with products per its specifications, invoiced MPI therefor, and shipped products to and for MPI, as directed.

8.    In or about August 2002, MPI and RNA entered into negotiations for a requirements contract, whereby RNA would be the exclusive manufacturer of certain products for MPI. To that end, on or about December 31, 2002, MPI and RNA entered into an agreement for RNA to supply all of MPI's requirements for certain of its products, which agreement provided MPI with favorable pricing and other terms (the "Agreement"). In exchange, MPI agreed *inter alia* to purchase such products and pay RNA in accordance with the terms set forth therein.

9.    The Agreement was to be in force for two years, subject at worst to termination upon ninety (90) days written notice. A copy of the Agreement as signed by Thomasma on behalf of MPI is attached as Exhibit A (without exhibits thereto). Up to on or about October 10, 2003, MPI placed and RNA filled orders pursuant to the Agreement (the "Requirements Relationship").

10.    To service the Agreement, at least during the Requirements Relationship, RNA invested in certain equipment, other materials and chemicals which it would not have otherwise purchased but for the Agreement. Further, RNA purchased certain chemicals unique to, and only to be used in, the production of MPI products, from MPI, in the amount of approximately $40,000. Such chemicals were shipped to RNA's facility by MPI, and were paid for by RNA by way of a

3

dollar-for-dollar credit extended to MPI as to product initially shipped to MPI by RNA at the beginning of the Requirements Relationship.

### The First Thomasma Oral Agreement

11.     During the Requirements Relationship, and shortly before September 30, 2003, in a phone call from Thomasma to one of RNA's officers, Thomasma stated that MPI was contemplating altering and/or terminating the Agreement.  In response, RNA's officer told Thomasma that the intent was for the Agreement to be a long-term commitment between MPI and RNA, and that at a minimum MPI was required to give RNA at least ninety (90) days written notice of termination, per the terms of the Agreement. Thomasma stated that his lawyer had told him that MPI did not have to give written notice to terminate the Agreement, but to avoid any dispute, he and MPI would agree to pay for certain research and development, and storage and chemical costs, particularly those chemicals that RNA had agreed to "buy" from MPI for the particular use in manufacturing MPI product (the "First Thomasma Oral Agreement").

12.     Pursuant to and consistent with the First Thomasma Oral Agreement, RNA issued its invoice number 29166 dated September 30, 2003 (the "September 30 Invoice"), reflecting the items that Thomasma and MPI agreed to pay for in the First Thomasma Oral Agreement.  A true and correct copy of the September 30 Invoice is attached hereto as Exhibit B, along with other open and unpaid RNA invoices to and due from MPI, as more fully alleged below.

### MPI's and Thomasma's Anticipatory Breach of the Agreement

13.     The Requirements Relationship terminated on or about October 10, 2003 when RNA received a letter from counsel for MPI, declaring an antecedent breach of the Agreement by virtue of RNA issuing the September 30 Invoice (the "October 10 Letter"), despite that (a) Thomasma had

4

agreed for himself and MPI to honor that invoice in the First Thomasma Oral Agreement, and (b) no written (or other) notice had been received nor cure period allowed as required by paragraph 9 of the Agreement with respect to this purported breach of the Agreement. A true and correct copy of MPI's October 10 Letter is attached as Exhibit C. In the October 10 Letter, MPI demanded the return of all MPI products manufactured by RNA and then stored by RNA for MPI and threatened legal action should RNA not return those products manufactured by RNA for MPI in its possession.

14.    By virtue of the First Thomasma Oral Agreement and the failure of MPI to provide any notice and cure period regarding the September 30 Invoice (even assuming it was not enforceable under the First Thomasma Oral Agreement and/or somehow constituted a breach of the Agreement, which it does not), the October 10 Letter was and is an anticipatory breach of the Agreement by MPI.

### The Second Thomasma Oral Agreement

15.    RNA challenged MPI's anticipatory breach of the Agreement in communications between it and Thomasma, after October 10, 2003. Thereafter, in a phone call from Thomasma to one of RNA's officers, Thomasma and RNA orally agreed to resolve any dispute concerning breach and/or improper termination of the Agreement. Specifically, to resolve any such dispute, Thomasma promised that MPI would immediately pay the September 30 Invoice, in full, provided that RNA promised to fill one or more new, separate MPI orders for private label MPI products, which Thomasma represented and promised that MPI would immediately pay RNA for said order(s) directly upon receiving invoicing for such order(s) from RNA, and further for which Thomasma "guaranteed" prompt payment. Relying on the promises and representations of Thomasma, RNA

5

agreed to the promises made by Thomasma, and therefore accepted the terms of the promises (the "Second Thomasma Oral Agreement").

16.     Pursuant to the Second Thomasma Oral Agreement, MPI placed new separate orders for product, which products RNA shipped, and which products are described in detail on invoices numbers 29311, 29312, 29313 and 29401, which are part and parcel of Exhibit B.  Despite placing such orders, which RNA promptly filled and shipped, and for which it issued invoices to MPI, MPI failed and refused to honor said invoices, and MPI and Thomasma failed to honor, and in fact breached, the Second Thomasma Oral Agreement.

### Thomasma's Promissory Scheme Continues

17.     In April 2004, Thomasma traveled to RNA's facility in Blue Island, to *inter alia* seek from RNA and its officers financing for a separate business transaction, which, if successful, Thomasma would stand to gain financially and personally inasmuch as Thomasma could avoid exposure under the above alleged personal guarantees.  During this meeting, and before discussing further, RNA's officers questioned Thomasma about the payments due to RNA under the September 30 Invoice and for additional product built and shipped to MPI under the Second Thomasma Oral Agreement.

18.     When confronted with the open invoices, and in particular those set forth in Exhibit B, Thomasma stated that he was surprised they had not been paid, that they were supposed to have been paid, that he would speak to his controller or accounts payable person upon return to Michigan and make sure that the invoices were all immediately paid.  Thomasma further confirmed the First and Second Thomasma Oral Agreements by stating his intent to ensure, personally, that those invoices would be honored.

6

### Common Law Fraud by MPI and Thomasma

19.    The statements made by Thomasma, in connection with the formation of the First Thomasma Oral Agreement    that MPI and Thomasma would pay for the items set forth in the September 30 Invoice – were all intentionally and knowingly false representations made to induce RNA to try to avoid claims of anticipatory breach of the Agreement.

20.    The statements made by Thomasma, in connection with the formation of the Second Thomasma Oral Agreement – that MPI committed immediate payment to RNA upon receipt of invoicing for shipments of new orders outside the Agreement, that MPI would immediately pay the September 30 Invoice, and that Thomasma guaranteed payment of such invoices  – were also all intentionally and knowingly false representations made to induce RNA to resolve its claim of anticipatory breach of the Agreement, and to induce RNA to agree to build, fill and ship more product to MPI, with the specific intent not to pay the September 30 Invoice or to pay for the new product manufactured by, shipped to and invoiced to MPI.

21.    Upon information and belief, the statements, promises and misrepresentations by Thomasma which are part and parcel of the both the First and Second Thomasma Oral Agreements were intended to (a) avoid financial exposure to MPI under the Agreement, (b) obtain the return of product from RNA pursuant to the Agreement, without paying for same, and (c) obtain new product, without paying for the same, all for the benefit of Thomasma to avoid personal exposure under the above alleged personal guarantees and to enhance the financial viability of his wholly owned company, MPI.  RNA reasonably and justifiably relied upon such promises, in part to be paid for amounts due and owing to it in the September 30 Invoice, and in part to recoup its investment in the equipment it had purchased specifically to perform under the Agreement.

7

22.     The statements made by Thomasma at the April meeting at RNA, like those made by Thomasma in connection with both the First and Second Thomasma Oral Agreements, were also all intentionally and knowingly false representations made to induce RNA and/or its officers to avoid collection activities against Thomasma and consider investing additional capital in business ventures that would benefit Thomasma, to further avoid claims of anticipatory breach of the Agreement. RNA reasonably and justifiably relied upon such promises, by at least delaying its efforts to enforce collection of the amounts due under the open invoices attached as Exhibit B.

23.     The misrepresentations of Thomasma and MPI made in connection with the formation of both the First and Second Thomasma Oral Agreements, and those made at the April meeting at RNA, constitute common law fraud in Illinois, as: (a) they were knowingly false misrepresentations; (b) they were material to RNA in entering into said agreements and/or delaying its enforcement activities, in that but for said misrepresentations, RNA would have pursued its claims under the Agreement and the applicable Uniform Commercial Code, and would not have entered into either oral agreement, under which RNA invested more time, effort and expense to build for and ship to MPI the new, additional orders set forth on the non-September 30 invoices attached as Exhibit B, and further would have pursued earlier the collection of its open invoices; (c) they were made by Thomasma and MPI to induce RNA to so act or omit; (d) they were reasonably and justifiably relied upon by RNA; and (e) such reliance resulted in significant damages to RNA.

24.     RNA has been damaged by virtue of these misrepresentations, in that in addition to foregoing its above-stated claims at the time of, and by entering into, the First and Second Thomasma Oral Agreements, RNA would not have invested more time, effort and expense to build for and ship to MPI the new, additional orders set forth on the non-September 30 invoices attached

8

as Exhibit B, which total $77,813.04, and further would have pursued earlier the collection of its open invoices.

25.    These continuing misrepresentations described above constitute a pattern of conduct whereby Thomasma, despite the above-referenced financial difficulties of MPI, continued making promises neither he nor MPI had any intention of keeping. Aware of RNA's substantial investment in the manufacture of MPI products, as shown in the September 30 Invoice, relying on RNA's desire to recoup the costs of said investment, and due to MPI's poor financial condition and lack of liquid funds, Thomasma devised this scheme by which to defraud RNA, which involved making misrepresentations concerning MPI's willingness and ability to pay for said investment and past and future product.    On no less than three separate occasions, Thomasma employed this scheme by making the above-described misrepresentations to accomplish the fraud, repeatedly making promises to pay the amounts represented in the September 30 Invoice immediately, and failing each time.

26.    The statements and misrepresentations by Thomasma and MPI were wilful, wanton and committed with malice aforethought, and RNA is entitled to punitive damages in an amount to be determined, but at least twice the damages it has suffered.

27.    RNA is entitled to prejudgment interest pursuant to the Illinois Interest Act, 815 ILCS 205/2.

WHEREFORE, plaintiff, RNA Corporation, respectfully requests that this Court enter judgment in its favor, and against the defendants, Most Products Inc. and David Thomasma, jointly and severally, in an amount to be determined at trial, but at least $77,813.04, plus incidental damages, punitive damages, attorney's fees, costs, interest, and such other and further relief as this Court deems just and proper.

9

## COUNT II
### (Breach of the First and Second Thomasma Oral Agreement)

28.     For paragraph 28 of Count II of its Complaint, RNA incorporates paragraphs 1 - 18 of Count I by reference as though fully set forth herein.

29.     Implied in every contract in Illinois – including the First and Second Thomasma Oral Agreements – is a covenant of good faith and fair dealing, which requires contracting parties to act in good faith towards each other, and requires parties to a contract who are vested with discretion under that contract to exercise that discretion reasonably, in good faith, and with proper motive, and not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations.

30.     MPI and Thomasma have breached the First and Second Thomasma Oral Agreements by failing to pay the September 30 Invoice, and by failing to pay the other invoices set forth in Exhibit B, in a total amount of at least $77,813.04.

31.     RNA has performed all of the material conditions required of it under the First and Second Thomasma Oral Agreements.

32.     RNA is entitled to prejudgment interest pursuant to the Illinois Interest Act, 815 ILCS 205/2.

WHEREFORE, plaintiff, RNA Corporation, respectfully requests that this Court enter judgment in its favor, and against the defendants, Most Products Inc. and David Thomasma, jointly and severally, in an amount to be determined at trial, but at least $77,813.04, plus incidental damages, costs, interest, and such other and further relief as this Court deems just and proper.

10

## COUNT III
### (Account Stated Against MPI and Thomasma)

33.    For paragraph 33 of Count III of its Complaint, RNA incorporates paragraphs 1 - 18 of Count I by reference as though fully set forth herein.

34.    RNA regularly sent to MPI statements of its account with RNA throughout the Requirements Relationship, which were paid in full. Similarly, after the First and Second Thomasma Oral Agreements, additional invoices were sent, and retained by MPI, including those non-September 30 invoices attached as Exhibit B.

35.    Despite receipt of the invoices attached to the Complaint as Exhibit B, MPI and Thomasma have failed and refused to pay said invoices, nor have either, or anyone acting on their behalf, such as counsel who authored the October 10 Letter, objected to the amounts set forth in the invoices set forth in Exhibit B.

36.    As to the September 30 Invoice, by virtue of the First and Second Thomasma Oral Agreements, MPI and Thomasma have additionally acquiesced to the accuracy and validity of said Invoice, and specifically agreed to pay it in full.

37.    As such, an account has been stated between RNA, on one hand, and MPI and Thomasma, on the other hand, which account is now due and owing, in the full amount of $77,813.04.

38.    RNA is entitled to prejudgment interest pursuant to the Illinois Interest Act, 815 ILCS 205/2.

WHEREFORE, plaintiff, RNA Corporation, respectfully requests that this Court enter judgment in its favor, and against the defendants, Most Products Inc. and David Thomasma, jointly

11

and severally, in an amount to be determined at trial, but at least $77,813.04, plus costs, interest, and such other and further relief as this Court deems just and proper.

## COUNT IV
### (UCC § 2-709)

39.    For paragraph 39 of Count IV of its Complaint, RNA incorporates paragraphs 1 - 18 of Count I by reference as though fully set forth herein.

40.    At all times pertinent, there was in force and effect a statute known as section 2-709 of the Illinois Uniform Commercial Code, 810 ILCS 5/2-709, which provides that a seller may recover, together with its incidental damages, the price of goods accepted by the buyer who refuses to pay for such goods as they become due.

41.    As a proximate result of Thomasma's and MPI's refusal to pay for goods from RNA as they became due, RNA incurred damages that totaled $77,813.04, and incidental damages including the cost of the materials and warehouse space secured for the MPI production, and the cost of the unused, specially blended chemicals specifically purchased for MPI production, in a total amount that exceeds $40,000.

WHEREFORE, plaintiff, RNA Corporation, prays that this Court enter judgment in its favor and against the defendants, Most Products Inc. and David Thomasma, jointly and severally, in an amount to be determined by the trier of fact but in no event less than $77,813.04 pursuant to 810 ILCS 5/2-709, plus incidental damages, prejudgment interest, costs of suit and such other and further relief as this Court deems just and proper.

12

## COUNT V
### (UCC § 2-708)

42.    For paragraph 42 of Count V of its Complaint, RNA incorporates paragraphs 1 - 18 of Count I by reference as though fully set forth herein.

43.    At all times pertinent, there was in force and effect a statute known as section 2-708 of the Illinois Uniform Commercial Code, 810 ILCS 5/2-708, which allows for the recovery of lost profits and incidental damages from a buyer who repudiates the contract.

44.    As a proximate result of Thomasma's and MPI's repudiation of the First and Second Thomasma Oral Agreements, RNA has lost the profits it reasonably expected to make from full performance of the First and Second Thomasma Oral Agreements by Thomasma and MPI, in an amount to be determined by the trier of fact, and in reliance upon which RNA incurred significant expenses, including for the equipment, chemicals and warehouse space it invested in to meet the production and shipping requirements of MPI.

WHEREFORE, plaintiff, RNA Corporation, prays that this Court enter judgment in its favor and against defendants, Most Products, Inc. and David Thomasma, in an amount to be determined by the trier of fact to reasonably compensate it for the profits lost as a consequence of MPI's repudiation of the Agreement pursuant to 810 ILCS 5/2-708(2), plus its incidental damages, prejudgment interest, costs of suit, and such other and further relief as this Court deems just and proper.

13

## COUNT VI
### (Unjust Enrichment)

45. For paragraph 45 of Count VI of its Complaint, RNA incorporates paragraphs 1 - 18 of Count I by reference as though fully set forth herein. This Count VII is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(e)(2).

46. Thomasma and MPI, by their failure and refusal to fully pay for goods provided to them by RNA, have unjustly obtained the benefit of the possession and/or sale of said goods to the detriment of RNA.

47. Thomasma's and MPI's retention of the benefits of the goods provided to them by RNA violates the fundamental principles of justice, equity, and good conscience.

48. RNA has been damaged by Thomasma's and MPI's unjust retention of the benefits of the goods provided in the amount of $77,813.04.

49. Pursuant to 815 ILCS 205-2, due to the vexatious delay in Defendant's failure to make payment, Plaintiff is entitled to prejudgment interest in the statutory amount of 5% per annum.

WHEREFORE, plaintiff, RNA Corporation, respectfully requests that this Court enter judgment in its favor, and against the defendants, Most Products Inc. and David Thomasma, jointly and severally, in an amount to be determined at trial, but at least $77,813.04, plus costs, interest, and such other and further relief as this Court deems just and proper.

14

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury.

Respectfully submitted,

**RNA CORPORATION**

By: _____
            One of Its Attorneys

Frederic A. Mendelsohn
ARDC No. 06193281
Daniel S. Klapman
ARDC No. 06243250
Schoenberg, Fisher, Newman & Rosenberg, Ltd.
222 South Riverside Plaza, Suite 2100
Chicago, Illinois 60606
312-648-2300

F:\dsk\RNA\pleadings\Complaint.wpd

15

**EXHIBIT A**

## MOST PRODUCTS, INC.
## CONTRACT MANUFACTURING AGREEMENT

**THIS AGREEMENT** is made and entered into this __31__ day of __December__, 2002, by and between Most Products Inc., a Michigan corporation having its principal place of business at 326 W. Kalamazoo Ave, Kalamazoo MI. 49007 (hereinafter referred to as Most Products Inc), and RNA, an Illinois corporation, (hereinafter referred to as RNA).

WHEREAS, RNA is in the business of manufacturing and marketing professional health and beauty aid products worldwide; and

WHEREAS, Most Products Inc. markets professional hair products under the trademarks_____ _____ _ _____
_____ (hereinafter, the "Products"); and

WHEREAS, RNA is in the business of contract manufacturing and packaging of hair products under the private labels of its customers; and

WHEREAS, RNA is desirous of contract manufacturing and packaging the Products of Most Products Inc. under the terms and conditions below.

NOW, THEREFORE, the parties for adequate consideration agree as follows:

1.    CONTRACT MANUFACTURING AND PACKAGING

    (a) Most Products Inc. hereby engages RNA to manufacture and package the Products using the formulas developed by Most Products Inc. and/or approved by Most Products Inc., identified in Attachment "A" to this Agreement.

    (b) RNA accepts the undertaking to manufacture and package the Products in accordance with the terms and conditions of this Agreement.

    (c) RNA agrees to accept and store in secure and safe facilities all necessary packaging components for the manufacture and packaging of the Products, without additional cost to Most Products Inc. Most Products Inc. shall be solely responsible for the cost of the packaging components, including shipping costs to RNA docks.

2.    SPECIFICATIONS

(a) RNA shall manufacture and package the Products in accordance with the specifications, procedures and standards supplied by Most Products Inc.

(b) RNA shall be responsible for insuring that all materials used in the manufacture and packaging of the Products comply with the specifications procedures and standards supplied by Most Products Inc. in accordance with Federal and State laws.

(c) RNA shall reimburse Most Products Inc. all costs incurred for any Products not in compliance with any specifications, procedures and standards supplied by Most Products Inc, to the extent that any products are unsaleable or have reduced value.

(d) RNA shall make available for collection of the finished Products only such individuals or shippers as Most Products Inc. may direct.

3.    PURCHASE OF PRODUCT

(a) From time to time during the course of this Agreement, Most Products Inc. shall place orders with RNA for the manufacturing, packaging and shipping of the Products. All such orders shall be in writing, or by facsimile transmission. Orders shall be shipped by RNA F.O.B. destination, freight collect.

(b) Most Products Inc. shall pay RNA for manufacturing and packaging in accordance with the prices established in the Purchase Order annexed hereto and marked Attachment "B".

(c) The prices and payment terms set forth on Attachment "C" shall remain in effect except for adjustments to the prices due to demonstrated increases of direct manufacturing costs (including component purchases) or packaging costs of the respective Products. In no event, however, shall a price increase be effective until ninety (90) days after Most Products Inc. has received written notification and justification of such price increase. In addition, the prices in Attachment "C" are contingent upon RNA manufacturing all products required by Most Products Inc. in the categories contained in Attachment "C". In the event that Most Products Inc. elects not to purchase all their required products as described above from RNA, then RNA may add to the remaining products that they do manufacture pursuant to this agreement and Most Products Inc. shall pay to RNA an amount equal to    % of the cost of said products.

4.    FORMULA CONSISTENCY

(a)  RNA shall manufacture and package the Products so that the Products will be consistent with each previously accepted batch.  To assure this consistency.  RNA will diligently and meticulously follow the written instructions, specifications, procedures and standards supplied by Most Products Inc.  RNA's formulations of the Products shall not change in any

respects, unless consented to in writing by Most Products Inc.

(b)  RNA understands and assumes full responsibility for any damages to Most Products Inc. as a result of any unauthorized modifications, deviations, or errors in formulation of the Products.  RNA shall credit Most Products Inc. for the return of non-conforming Products, including the costs of the manufacture and packaging of the Products and costs of the packaging components.

5.    FORMULATION RECORDS AND REPORTS

(a)  RNA shall maintain adequate records on its chemical processing, formulation, packaging and quality control of the Products.  Such records shall be open to inspection of Most Products Inc.

(b)  RNA shall retain three (3) samples from each batch of Products.  One (1) sample shall be forwarded to Most Products Inc. and two (2) samples shall be retained by RNA's Quality Control Department.

(c)  RNA shall indemnify Most Products Inc. in connection with its record keeping and quality control of the chemical processing, manufacturing and packaging process.

(d)  Most Products Inc. shall be responsible for any component specifications it provides to RNA with respect to the Products and shall indemnify RNA for any defects in the component specifications, except for damages resulting from RNA's failure to strictly adhere to such specifications in the quality control, chemical processing, manufacturing and packaging processes.

6.    INSURANCE WARRANTIES AND INDEMNIFICATION

(a)  RNA hereby agrees to insure the Products manufactured and packaged for Most Products Inc. and shall furnish Most Products Inc. with Certificates of Insurance with acceptable coverage of at least $1,000,000 per occurrence, including a Broad Form Vendors' Certificate.  RNA shall

name Most Products Inc. as an additional insured under said policy. If such policy is a "claims made" policy as opposed to an "occurrence" policy, RNA shall, at the end of each term, procure and necessary "tail coverage" which shall cover Most Products Inc. for all Products produced by RNA under this Agreement.

(b) RNA hereby warrants and agrees that no Products produced and/or filled and shipped by it shall be adulterated within the meaning of the Federal Food, Drug and Cosmetic Act.

(c) Except for Most Products Inc. responsibility for component specifications as set forth in Section 5 (d) above, RNA hereby agrees and assumes responsibility for (i) the merchantability, efficacy, package ability, stability and shelf life of the Product; (ii) the freedom from adulteration at the time of delivery and the safety for the purposes intended, efficacy of all ingredients, and raw materials; (iii) the compliance of the Products with the provisions of the Food, Drug and Cosmetic Act covering safety, efficacy and adulteration; (iv) the compliance of the Products with any contractual obligations or warranties as to the safety for the purposes intended and efficacy; and (v) indemnifying and holding Most Products Inc. harmless against all claims, costs, expenses, including attorney fees and costs which Most Products Inc. may incur in connection with any liability claim connected with the manufacture or packaging of the Products. Specifically excluded hereunder shall be any claims of misbranded or mislabeled Products, unless such relates to the warranties expressly stated herein by RNA.

7.    CONFIDENTIALITY

RNA and Most Products Inc. covenant and agree to maintain the secrecy and confidentiality with respect to the proprietary information relating to all patents, formulas, trademarks, copyrights, specifications, procedures and other proprietary information of the other (herein after, "Confidential Information") and to refrain from disclosing or using such Confidential Information without the other party's explicit written consent, unless otherwise ordered by a court after prior notice to the other party. The parties acknowledge that monetary damages alone would be inadequate to remedy a breach of this provision and both parties shall be entitled to injunctive relief to enjoin a violation hereof. RNA acknowledges that the formulas, trademarks, copyrights, specifications and procedures relating to the Products are the Confidential Information of Most Products Inc.

8.    COMPLIANCE WITH LAW

RNA shall comply with all federal, state and local laws and regulations in the operation of its contract manufacturing and packaging business and shall indemnify and hold Most Products Inc. harmless with respect to any claims or actions filed in connection therewith, including but not limited to RNA's receipt, storage, use and/or disposal of "Hazardous Substances". RNA shall

maintain, in accordance with federal, state and local laws and regulations required and appropriate material safety data sheets ("MSDS") on each of the Products and make the same available to Most Products Inc. and/or its customers upon request.

9.    TERM

This Agreement shall commence on the date of execution hereof and continue for a period of Two (2) years. The Agreement shall be automatically renewed for additional one-year terms, unless either party has served notice of termination in writing on the other party within ninety (90) days of the end of the ensuing term. Either party may terminate this Agreement during the term for any reason by giving the other party at least ninety (90) days advance notice in writing.

In the event that there is a breach of this agreement by either party that is not cured within 30 days of written notice the non breaching party may terminate this agreement without further notice.

Upon termination of the Agreement, RNA shall immediately release to Most Products Inc. all remaining inventory of packaging and other components for the Products. RNA shall be entitled to payment for the manufacture and packaging of all acceptable finished Products as of the effective date of termination.

10.    ASSIGNMENT

Neither party shall assign this Agreement or in any rights or duties under this Agreement to another party without the written consent of the other party.

11.    ENTIRE AGREEMENT

(a) This Agreement integrates all prior representations and agreements of the parties and is the complete and exclusive evidence of the terms of the agreement between them.

(b) This Agreement may not be amended, changed or modified except in writing and signed by the party to be charged by the amendment, change or modification.

12.   <u>GOVERNING LAW</u>

This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Michigan, with exclusive jurisdiction and venue in the federal or state courts of Kalamazoo County, Michigan.

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the date set forth above.

MOST PRODUCTS, INC.

_____        By: _____
ATTEST                                          President

RNA

_____        By: _____
ATTEST                                          President

# EXHIBIT B

**Invoice Number:**
29166

**Invoice Date:**
Sep 30, 2003

**Page:**
1

Sold To: MOST PRODUCTS INC.
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI  49080

Ship to:

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | | UPON RECEIPT | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | | | 10/30/03 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| | | FINISHED GOODS IN DRUMS... | | |
| 200.00 | | LBS   ABSOLUTE DARK | 1.11 | 222.00 |
| | | DRUM | | 20.00 |
| 250.00 | | LBS   VITAGUARD | 0.61 | 152.50 |
| | | DRUM | | 20.00 |
| 450.00 | | LBS HOT SPELL | 0.99 | 445.50 |
| | | DRUM | | 20.00 |
| | | COMPONENT WAREHOUSING | | |
| 146.00 | | DAYS   56 PALLETS AT .50 | 28.00 | 4,088.00 |
| | | PER DAY | | |
| | | R&D EXPENSES | | |
| 24.00 | | FORMULAS CONVERTED | 500.00 | 12,000.00 |
| 24.00 | | STABILITY TEST | 250.00 | 6,000.00 |
| | | FREIGHT OUT CHARGES | | |
| 56.00 | | PALLETS FOR LABOR AND | 5.00 | 280.00 |
| | | PAPERWORK | | |
| | | UNPAID FREIGHT CHARGES | | 291.53 |
| | | SEE INVOICE 24700 | | |
| | | ALL UNIQUE CHEMICALS | | |
| | | PURCHASED FOR MOST WILL BE | | |
| | | INVOICED ON OCTOBER 8, | | |

| | |
|---|---|
| Subtotal | |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment Received | Continued |
| **TOTAL** | Continued |

Check No:

September 30, 2003

Invoice Number:
29166

Invoice Date:
Sep 30, 2003

**Page**:
5

Sold To: MOST PRODUCTS INC.
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI   49080

Ship to:

| Customer ID | | Customer PO | | Payment Terms | |
|---|---|---|---|---|---|
| MOST | | | | UPON RECEIPT | |
| Sales Rep ID | | Shipping Method | | Ship Date | Due Date |
| | | | | | 10/30/03 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| | | 2003. | | |

| | | |
|---|---|---|
| | Subtotal | |
| | Sales Tax | |
| | Total Invoice Amount | 30,206.11 |
| Check No: | Payment Received | 0.00 |
| | **TOTAL** | 30,206.11 |

September 30, 2003

Invoice Number:
29311

Invoice Date:
Dec 12, 2003

**Page:**
1

Sold To: MOST PRODUCTS INC.
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI  49080

Ship to: XELA PACK
8300 BOETTNER ROAD
BRIDGEWATER, MI  48115

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | 991645 | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | MAVERICK TRUCKING | 12/2/03 | 1/11/04 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 1.00 | SKID | SKID<br>B/L  075403 | 7.50 | 7.50 |

| | | |
|---|---|---|
| Subtotal | | |
| Sales Tax | | |
| Total Invoice Amount | | 1,906.50 |
| Payment Received | | 0.00 |
| **TOTAL** | | 1,906.50 |

Check No:

December 12, 2003

**Invoice Number:**
29312

**Invoice Date:**
Dec 12, 2003

**Page:**
1

Sold To: MOST PRODUCTS INC.          Ship to:
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI  49080

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | 991642 | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | MAVERICK TRUCKING | 12/2/03 | 1/11/04 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 83.00 | | SHIPPERS | 0.70 | 58.10 |
| 4.00 | SKID | SKID | 7.50 | 30.00 |
| | | B/L  075503 | | |

|  |  |
|---|---|
| Subtotal | |
| Sales Tax | |
| Total Invoice Amount | 7,064.78 |
| Payment Received | 0.00 |
| **TOTAL** | 7,064.78 |

Check No:

December 12, 2003

Invoice Number:
29313

Invoice Date:
Dec 12, 2003

**Page:**
1

Sold To: MOST PRODUCTS INC.
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI 49080

Ship to:

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | 991642 | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | WATKINS | 12/9/03 | 1/11/04 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 5,690.00 | MOST-FG-01808 | ABSOLUTE HEAT 8OZ | 1.20 | 6,828.00 |
| 2,665.00 | MOST-FG-06408 | SIMPLICITY 8.5OZ | 1.02 | 2,718.30 |
| 5,426.00 | MOST-FG-11208 | PM CHARMINGLY DARK 8OZ | 1.05 | 5,697.30 |
| 900.00 | MOST-FG-01600 | 2 DRUMS ABSOLUTE DARK 450# | 1.63 | 1,467.00 |
| 324.00 | | SHIPPERS | 0.70 | 226.80 |
| 14.00 | SKID | SKID | 7.50 | 105.00 |
| | | B/L 076503 | | |

| | | |
|---|---|---|
| | Subtotal | |
| | Sales Tax | |
| | Total Invoice Amount | 23,976.00 |
| Check No: | Payment Received | 0.00 |
| | **TOTAL** | 23,976.00 |

December 12, 2003

# Invoice

Invoice Number:
**29401**

Invoice Date:
**Feb 10, 2004**
Page:
**1**

Sold To: **MOST PRODUCTS INC.**
　　　　**921 WAKEFIELD STREET**
　　　　**PO BOX 375**
　　　　**PLAINWELL, MI   49080**

Ship To

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | 991642   991652 | Net 30 Days | |
| Sales Rep | Shipping Method | Ship Date | Due Date |
| | WATKINS MOTOR LINES | 2/9/04 | 3/11/04 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 4,751.00 | MOST-FG-LOADED | ABSOLUTE LOADED 8OZ | 1.41 | 6,698.91 |
| 7,513.00 | MOST-FG-10108 | ISL HEAT RUM PUNCH 8OZ. | 0.95 | 7,137.35 |
| 47.00 | MOST-FG-10199 | ISL HEAT RUM PUNCH 128OZ | 9.88 | 464.36 |
| 9.00 | SKID | SKID | 7.50 | 67.50 |
| | | B/L 07104 | | |

| | | |
|---|---|---|
| | Subtotal | 14,368.12 |
| | Sales Tax | |
| | Total Invoice Amount | 14,368.12 |
| Check/Credit Memo No: | Payment/Credit Applied | |
| | **TOTAL** | **$14,368.12** |

**EXHIBIT C**

# PRASHER LAW GROUP, PLC

### ATTORNEYS AT LAW

GREGORY G. PRASHER
E-MAIL:
greg@prasherlaw.com
WEB PAGE:
www.prasherlaw.com

MAIN OFFICE
THE STEEPLEVIEW BUILDING
429 TURNER NW
GRAND RAPIDS, MI 49504
TEL: 616-454-7780
FAX: 616-454-2232

October 10, 2003

John Harms
RNA Corporation
13750 South Chatham Street
Blue Island, IL 60406

Re:  Most Products Inc. v. RNA Corporation

Dear Sir:

Under the terms of the agreement your company has with Most Products Inc.
dated December 31, 2002 you are required, upon termination of the agreement, to
"immediately release to Most Products Inc. all remaining inventory of packaging and
other components for the products". This agreement has been terminated by Most
Products Inc. because of your company's persistent breach of the requirements of the
contract. As a result you are required to immediately return all of the Most Products
materials currently in your possession and without trying to extort monies for such things
as warehousing costs not contemplated by the contract. Your invoice to Most Products
dated September 30, 2003 is contrary to the terms and provisions of the contract with
Most Products Inc.

You are hereby directed to release all of the Most Products components in your
company's possession no later than Friday, October 17, 2003. Failure to do so will
subject your company to an immediate lawsuit for conversion, breach of contract and
multiple statutory damages.

I trust that action will not be necessary.

Very truly yours,

Gregory G. Prasher

GGP/bjs
Cc:  Dave Thomasma

NORTH OFFICE
4770 PLAINFIELD AVENUE

EAST OFFICE
835 FAIRVIEW AVENUE

WEST OFFICE
4095 CHICAGO DR. SW

Exhibit B



AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

RNA Corporation

CASE NUMBER: **04C 6070**

V.                                                          **JUDGE ZAGEL**

ASSIGNED JUDGE:

Most Products, Inc. and David Thomasma

DESIGNATED                **MAGISTRATE JUDGE DENLOW**
MAGISTRATE JUDGE:

TO: (Name and address of Defendant)

David J. Thomasma
3131 Manhattan Lane
Grand Rapids, Michigan 49506

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Frederic A. Mendelsohn
Daniel S. Klapman
Schoenberg, Fisher, Newman & Rosenberg, Ltd.
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606

an answer to the complaint which is herewith served upon you, within _____*20*_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

MICHAEL W. DOBBINS, CLERK

_____                    SEP 1 7 2004

(By) DEPUTY CLERK                                          DATE

AO 440 (Rev. 05/00) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served: _____

_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____

_____

_____

☐  Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
　　　　　　　　　Date　　　　　　　　　　　Signature of Server


_____
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

RNA Corporation

**SUMMONS IN A CIVIL CASE**

## 04C 6070

V.

CASE NUMBER:

Most Products, Inc. and David Thomasma

ASSIGNED JUDGE:   **JUDGE ZAGEL**

DESIGNATED
MAGISTRATE JUDGE:   **MAGISTRATE JUDGE DENLOW**

TO: (Name and address of Defendant)

Most Products, Inc.
c/o Registered Agent
David J. Thomasma
921 Wakefield
Plainwell, Michigan 49080

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Frederic A. Mendelsohn
Daniel S. Klapman
Schoenberg, Fisher, Newman & Rosenberg, Ltd.
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606

an answer to the complaint which is herewith served upon you, within _____**20**_____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

MICHAEL W. DOBBINS, CLERK

(By) DEPUTY CLERK

SEP 1 7 2004

DATE

AO 440 (Rev. 05/00) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER (PRINT) | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted. _____

_____

_____

☐ Other (specify): _____

_____

_____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                    Date                        *Signature of Server*


                                   _____
                                        *Address of Server*


(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Exhibit C



AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### SUMMONS IN A CIVIL CASE

RNA Corporation

**04C 6070**

CASE NUMBER:

V.

ASSIGNED JUDGE:

Most Products, Inc. and David Thomasma

DESIGNATED
MAGISTRATE JUDGE:

TO: (Name and address of Defendant)

Most Products, Inc.
c/o Registered Agent
David J. Thomasma
921 Wakefield
Plainwell, Michigan 49080

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Frederic A. Mendelsohn
Daniel S. Klapman
Schoenberg, Fisher, Newman & Rosenberg, Ltd.
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606

an answer to the complaint which is herewith served upon you, within _____ *20* _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

DAVID JOZWIAK

(By) DEPUTY CLERK

DATE

AO 440  (Rev. 05/00)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | 9/30/04 |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| Garth Sewers | Court Officer |

*Check one box below to indicate appropriate method of service*

[X]  Served personally upon the defendant. Place where served:  809 Burton SW

Wyoming M, 44509

[ ]  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

[ ]  Returned unexecuted: _____

_____

_____

[ ]  Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  9/20/04
_____ Date

Signature of Server

PO Box 7823  Grand Rapids Mi
_____ 49510
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

CLERK, U.S. DISTRICT COURT

**SUMMONS IN A CIVIL CASE**

RNA Corporation

**04C    6070**

CASE NUMBER:

V.

ASSIGNED JUDGE:     JUDGE ZAGEL

Most Products, Inc. and David Thomasma

DESIGNATED
MAGISTRATE JUDGE: MAGISTRATE JUDGE DENLOW

TO: (Name and address of Defendant)

David J. Thomasma
3131 Manhattan Lane
Grand Rapids, Michigan 49506

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Frederic A. Mendelsohn
Daniel S. Klapman
Schoenberg, Fisher, Newman & Rosenberg, Ltd.
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

DAVID JOZWIAK

_____
(By) DEPUTY CLERK

SEP 1   04

_____
DATE

AO 440 (Rev. 05/00) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE 9/30/04 |
| NAME OF SERVER *(PRINT)* Garth Sewers | TITLE Court Officer |

*Check one box below to indicate appropriate method of service*

[X] Served personally upon the defendant. Place where served: 801 Burton SW Wyoming Mi 49509

[ ] Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

[ ] Returned unexecuted: _____

_____

_____

[ ] Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on 9/30/04
_____
Date

_____
*Signature of Server*

PO Box 7823 Grand Rapids M. 49510
_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Exhibit D



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

RNA CORPORATION )
an Illinois corporation, )
)
               Plaintiff, )
)   No.    04 C 6070
)
          v. )
)   Judge James B. Zagel
MOST PRODUCTS, INC., a Michigan )
corporation, and DAVID THOMASMA )
)
           Defendants. )

## AFFIDAVIT OF JOHN HARMS
## IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

    1.    I am the Director of Marketing Custom Manufacturing for RNA Corporation ("RNA") the plaintiff in the captioned lawsuit. I have personal knowledge of the facts described herein and if called to testify could competently do so as to the facts contained in this Affidavit. This Affidavit is submitted in connection with Plaintiffs Motion for Default Judgment (the "Motion") in the above-captioned lawsuit.

    2.    RNA is, and at all relevant times to this lawsuit, engaged in the business of manufacturing and marketing professional health and beauty aids products. RNA manufactures many such products for other businesses under one or more trade names of such businesses, a process known as "private labeling."

    3.    Defendant, Most Products, Inc. (MPI), is engaged in the business of manufacturing and marketing professional hair and body care products under various trade names, including Vitiguard, Hotspell and Absolute Dark.

    4.    Defendant, David Thomasma is, and at all times relevant this is lawsuit, was the President and the sole shareholder of MPI.

5.    MPI is, and since 2002 has been, a customer of RNA, for whom RNA manufactured private label products for resale by MPI.

6.    In his capacity as President and sole owner of MPI, Thomasma enjoyed complete discretion as to whether or not to enter into business in Illinois, or to create and develop a business relationship with RNA. In that same capacity, each and every action of Thomasma described below was made to serve his own personal interests.

7.    I know Mr. Thomasma personally, and he is not currently serving in the military. This is evidenced by the fact that on September 30, 2004, he was personally served in Wyoming, Michigan, by Garth Sewers of Grand Rapids Michigan.

8.    In or about July 2002, MPI sought to do business with RNA, and in furtherance thereof and in anticipation of revealing to RNA its formulas for various products, entered into a certain Confidential Agreement with RNA. Thomasma executed that agreement on behalf of MPI as its President. Thereafter, RNA supplied MPI, from time-to-time, with products per its specifications, invoiced MPI therefore, and shipped the products to and from MPI as directed.

9.    In or about August 2002, MPI and RNA entered into negotiations for a requirements contract, whereby RNA would be the exclusive manufacturer of certain products for MPI. To that end, on or about December 31, 2002, MPI and RNA entered into an agreement for RNA to supply all of MPI's requirements for certain of its products, which agreement provided MPI with favorable pricing and other terms (the "Agreement"). In exchange, MPI agreed, *inter alia*, to purchase such products and pay RNA in accordance with the terms set forth therein.

10.    The Agreement was to be in force for two years, subject at worst to termination upon ninety (90) days written notice. A true and accurate copy of the Agreement as signed by

Thomasma on behalf of MPI is attached as Exhibit A to the Complaint for Fraud, Statutory Violations and Other Relief (the "Complaint"). Up to on or about October 10, 2003, MPI placed—and RNA filled—orders pursuant to the Agreement (the "Requirements Relationship").

11. To service the Agreement, at least during the Requirements Relationship, RNA invested in certain equipment, other materials and chemicals that it would not have otherwise purchased but for the Agreement. Further, RNA purchased certain chemicals unique to and only to be used in the production of MPI products, from MPI, in the amount of approximately $40,000. Such chemicals were shipped to RNA's facility by MPI and were paid by RNA by way of a dollar-for-dollar credit extended to MPI as to product initially shipped to MPI by RNA at the beginning of the Requirements Relationship.

12. During the Requirements Relationship, and shortly before September 30, 2003, Thomasma stated that MPI was contemplating altering and/or terminating the Agreement. Thomasma stated that, to avoid any dispute, he and MPI would agree to pay for certain research and development, and storage and chemical costs, particularily those chemicals that RNA had agreed to "buy" from MPI for the particular use in manufacturing MPI product (the "First Thomasma Oral Agreement").

13. Pursuant to and consistent with the First Thomasma Oral Agreement, RNA issued its invoice number 29166 dated September 30, 2003, reflecting the items that Thomasma and MPI agreed to pay for in the First Thomasma Oral Agreement. A true and correct copy of the September 30, 2003 invoice is attached hereto as Exhibit 1. The September 30, 2003 invoice is for $30,206.11 and, to date, has not been paid by MPI.

14. As detailed in paragraphs 13 and 14 of the Complaint, by letter dated October 10, 2003 (a true and correct copy of which is attached to the Complaint as Exhibit C), MPI

anticipatorily breached the Agreement.

15.    RNA subsequently challenged MPI's October 10, 2003 anticipatory breach of the Agreement, and in a phone call from Thomasma to one of RNA's officers, Thomasma and RNA orally agreed to resolve any dispute concerning a breach and/or improper termination of the Agreement.  Specifically, Thomasma promised that MPI would immediately pay the September 30, 2003 invoice in full, provided that RNA promised to fill one or more new, separate MPI orders for private label MPI products.  Thomasma represented and promised that MPI would pay RNA for said orders directly upon receiving invoicing for such orders from RNA.

16.    Relying on the promises and representations of Thomasma, RNA agreed to the promises made by Thomasma and, therefore, accepted the terms of the promises (the "Second Thomasma Oral Agreement").

17.    Pursuant to the Second Thomasma Oral Agreement, MPI placed separate orders for product, which products RNA shipped, and which products are described in detail on invoices numbers 29311, 29312, 29313 and 29401 (the "second oral agreement invoices").  A true and accurate copy of invoices numbers 29311, 29312, 29313 and 29401 are attached hereto as Exhibit 2.  MPI refused to honor these four invoices and, as such, has breached the Second Thomasma Oral Agreement.

18.    The sum of invoices numbers 29311, 29312, 29313 and 29401 total $47,315.40. To date, this sum has not been paid by MPI to RNA.

19.    In April 2004, during a visit to RNA, Mr. Thomasma was confronted with the open September 30, 2003 invoice and the second oral agreement invoices, Thomasma stated that he was surprised they had not been paid and that he would speak to his controller or accounts payable person and make sure that the invoices were all paid immediately.  Thomasma further

confirmed the First and Second Thomasma Oral Agreements by stating his intent to ensure, personally, that those invoices would be honored.

20.    In further support of the Motion, I spoke to Mr. Thomasma on the telephone on or about October 12, 2004, and he (1) acknowledged receipt of the above captioned complaint (the "Complaint"), acknowledged his indebtedness to RNA as alleged in the Complaint, confirmed he is currently working at Most Products, Inc. ("Most"), and stated he plans to increase his presence at Most on a going forward basis.

21.    The total amount due and owing to RNA, as reflected by the September 30, 2003 invoice and the second oral agreement invoices, is $77,521.51.


FURTHER AFFIANT SAYETH NOT

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct and was executed at Blue Island, Illinois.


_____
JOHN HARMS

Subscribed and sworn to, before
this 9th day of March, 2005.

_____
Notary Public

My commission expires:

OFFICIAL SEAL
DEIRDRE GIST
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/12/08

1



Invoice Number:
29166

Invoice Date:
Sep 30, 2003

**Page:**
1

Sold To:  MOST PRODUCTS INC.
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI   49080

Ship to:

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | | UPON RECEIPT | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | | | 10/30/03 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| | | FINISHED GOODS IN DRUMS... | | |
| 200.00 | | LBS   ABSOLUTE DARK | 1.11 | 222.00 |
| | | DRUM | | 20.00 |
| 250.00 | | LBS   VITAGUARD | 0.61 | 152.50 |
| | | DRUM | | 20.00 |
| 450.00 | | LBS HOT SPELL | 0.99 | 445.50 |
| | | DRUM | | 20.00 |
| | | COMPONENT WAREHOUSING | | |
| 146.00 | | DAYS   56 PALLETS AT .50 | 28.00 | 4,088.00 |
| | | PER DAY | | |
| | | R&D EXPENSES | | |
| 24.00 | | FORMULAS CONVERTED | 500.00 | 12,000.00 |
| 24.00 | | STABILITY TEST | 250.00 | 6,000.00 |
| | | FREIGHT OUT CHARGES | | |
| 56.00 | | PALLETS FOR LABOR AND | 5.00 | 280.00 |
| | | PAPERWORK | | |
| | | UNPAID FREIGHT CHARGES | | 291.53 |
| | | SEE INVOICE 24700 | | |
| | | ALL UNIQUE CHEMICALS | | |
| | | PURCHASED FOR MOST WILL BE | | |
| | | INVOICED ON OCTOBER 8, | | |

| | | |
|---|---|---|
| Subtotal | | |
| Sales Tax | Continued | |
| Total Invoice Amount | Continued | |
| Payment Received | Continued | |
| **TOTAL** | Continued | |

Check No:

September 30, 2003

Invoice Number:
29166

Invoice Date:
Sep 30, 2003

**Page:**
5

Sold To: MOST PRODUCTS INC.　　　　Ship to:
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI　49080

| Customer ID | Customer PO | Payment Terms |
|---|---|---|
| MOST | | UPON RECEIPT |

| Sales Rep ID | Shipping Method | Ship Date | Due Date |
|---|---|---|---|
| | | | 10/30/03 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| | | 2003. | | |

|  |  |
|---|---|
| Subtotal | |
| Sales Tax | |
| Total Invoice Amount | 30,206.11 |
| Payment Received | 0.00 |
| **TOTAL** | 30,206.11 |

Check No:

September 30, 2003

2



Invoice Number:
29311

Invoice Date:
Dec 12, 2003

**Page:**
1

Sold To: MOST PRODUCTS INC.
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI   49080

Ship to: XELA PACK
8300 BOETTNER ROAD
BRIDGEWATER, MI   48115

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | 991645 | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | MAVERICK TRUCKING | 12/2/03 | 1/11/04 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 1.00 | SKID | SKID<br>B/L   075403 | 7.50 | 7.50 |

| | | | |
|---|---|---|---|
| | | Subtotal | |
| | | Sales Tax | |
| | | Total Invoice Amount | 1,906.50 |
| Check No: | | Payment Received | 0.00 |
| | | **TOTAL** | 1,906.50 |

December 12, 2003

Invoice Number:
29312

Invoice Date:
Dec 12, 2003

Page:
1

Sold To: MOST PRODUCTS INC.
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI  49080

Ship to:

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | 991642 | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | MAVERICK TRUCKING | 12/2/03 | 1/11/04 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 83.00 | | SHIPPERS | 0.70 | 58.10 |
| 4.00 | SKID | SKID | 7.50 | 30.00 |
| | | B/L   075503 | | |

|  |  |
|---|---|
| Subtotal | |
| Sales Tax | |
| Total Invoice Amount | 7,064.78 |
| Payment Received | 0.00 |
| **TOTAL** | 7,064.78 |

Check No:

December 12, 2003

Invoice Number:
29313

Invoice Date:
Dec 12, 2003

**Page:**
1

Sold To: MOST PRODUCTS INC.          Ship to:
921 WAKEFIELD STREET
PO BOX 375
PLAINWELL, MI   49080

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | 991642 | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | WATKINS | 12/9/03 | 1/11/04 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 5,690.00 | MOST-FG-01808 | ABSOLUTE HEAT 8OZ | 1.20 | 6,828.00 |
| 2,665.00 | MOST-FG-06408 | SIMPLICITY 8.5OZ | 1.02 | 2,718.30 |
| 5,426.00 | MOST-FG-11208 | PM CHARMINGLY DARK 8OZ | 1.05 | 5,697.30 |
| 900.00 | MOST-FG-01600 | 2 DRUMS  ABSOLUTE DARK 450# | 1.63 | 1,467.00 |
| 324.00 | | SHIPPERS | 0.70 | 226.80 |
| 14.00 | SKID | SKID | 7.50 | 105.00 |
| | | B/L   076503 | | |

| | | |
|---|---|---|
| | Subtotal | |
| | Sales Tax | |
| | Total Invoice Amount | 23,976.00 |
| Check No: | Payment Received | 0.00 |
| | **TOTAL** | 23,976.00 |

December 12, 2003

# Invoice

Invoice Number:
**29401**
Invoice Date:
**Feb 10, 2004**
Page:
**1**

Sold To: **MOST PRODUCTS INC.**
      **921 WAKEFIELD STREET**
      **PO BOX 375**
      **PLAINWELL, MI   49080**

Ship To

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| MOST | 991642   991652 | Net 30 Days | |
| Sales Rep | Shipping Method | Ship Date | Due Date |
| | WATKINS MOTOR LINES | 2/9/04 | 3/11/04 |

| Quantity | Item | Description | Unit Price | Extension |
|---|---|---|---|---|
| 4,751.00 | MOST-FG-LOADED | ABSOLUTE LOADED 8OZ | 1.41 | 6,698.91 |
| 7,513.00 | MOST-FG-10108 | ISL HEAT RUM PUNCH 8OZ | 0.95 | 7,137.35 |
| 47.00 | MOST-FG-10199 | ISL HEAT RUM PUNCH 128OZ | 9.88 | 464.36 |
| 9.00 | SKID | SKID | 7.50 | 67.50 |
| | | B/L 07104 | | |

| | | |
|---|---|---|
| Subtotal | | 14,368.12 |
| Sales Tax | | |
| Total Invoice Amount | | 14,368.12 |
| Payment/Credit Applied | | |
| **TOTAL** | | **$14,368.12** |

Check/Credit Memo No:

Exhibit E

 RECYCLED PAPER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | | |
|---|---|---|
| RNA CORPORATION<br>an Illinois corporation, | )<br>)<br>) | |
| Plaintiff, | )<br>)<br>) | No.    04 C 6070 |
| v. | )<br>) | |
| MOST PRODUCTS, INC., a Michigan<br>corporation, and DAVID THOMASMA | )<br>)<br>) | Judge James B. Zagel |
| Defendants. | ) | |

## AFFIDAVIT OF FREDERIC A. MENDELSOHN AS TO COURT RELATED
## COSTS AND PREJUDGMENT INTEREST

Frederic A. Mendelsohn, being first duly sworn on oath, deposes and states as follows:

1.    He is an attorney licensed to practice law in the State of Illinois and is a shareholder in the firm of Burke, Warren, MacKay & Serritella, P.C.  Prior to January 6, 2005, he was a partner at the law firm of Schoenberg, Fisher, Newman & Rosenberg, Ltd.  As one of the attorneys for Plaintiff in the above-captioned proceeding, he has knowledge of the facts stated herein and if called to testify could competently do so as to the facts contained in this Affidavit.

2.    Attached hereto as Exhibit 1 is a copy of Billing Details (and a receipt from the United States District Court) for work performed in connection with the above-captioned lawsuit.  All costs are calculated through January 3, 2005.

3.    The attached Billing Details show that Plaintiff has expended a total sum of $291.67 for court and related costs in connection with this matter through January 3, 2005, itemized as follows:

Court Filing Fee:                               $150.00

Photocopies, facsimile, federal express
and telephone :                                    $111.67

Docket Clerk Fees:                                 $30.00

4.      Furthermore, the Illinois Interest Act, 815 ILCS 205/1 *et seq.*, provides for
prejudgment interest at an annual rate of five percent for, *inter alia*, "money withheld by an
unreasonable and vexatious delay of payment."

5.      Defendant has unreasonably and vexatiously delayed payment to Plaintiff in this
lawsuit, and, therefore, Plaintiff is entitled to prejudgment interest in the sum of $5,037.03. A
chart showing this calculation is attached hereto as Exhibit 2.

6.      Therefore, the total amount due and owing to Plaintiff for court related costs and
prejudgment interest, as of March 17 2005, is $5,328.70.


FURTHER AFFIANT SAYETH NOT

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing
is true and correct and was executed at Chicago, Illinois.


FREDERIC R. MENDELSOHN

Subscribed and sworn to before
this 11 th day of March, 2005.

Notary Public

My commission expires:

"OFFICIAL SEAL"
JOHN FOGARTY, JR.
COMMISSION EXPIRES 09/25/06

1



*Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 · FAX 312/648-1212

TAXPAYER ID#36-2839539

RNA         FAM                              SEPTEMBER 01, 2004 PAGE    3
RNA Corporation                              REF NO.   671382


RECAP OF FEES BILLED

| | | | |
|---|---|---|---|
| Frederic A. Mendelsohn | 0.50 Hrs | 285.00/Hr | 142.50 |
| Law clerk | 0.60 Hrs | 30.00/Hr | 18.00 |
| **TOTAL** | **1.10 Hrs** | $ | **160.50** |


GEN   General

| | | | | |
|---|---|---|---|---|
| 08/03/04 | FAM | Prepare status memo/letter regarding National Interchem deal and follow-up regarding Most Products claim. | 3.20 | 912.00 |
| 08/11/04 | FAM | Conference with Muhammad Akhtar regarding National Interchem matter and collection claim against Most Products, Inc. | .40 | 114.00 |
| 08/12/04 | FAM | Conference with John Harms and Marsha regarding Most Products claim. | .50 | 142.50 |
| 08/19/04 | FAM | Conferences with John Harms re: facts relating to most products claims. | .30 | 85.50 |
| 08/23/04 | TPC | Draft complaint and follow-up conference with office re: research on open issues. | 3.90 | 916.50 |
| 08/26/04 | LJG | Telcon with FAM re settlement agreement; reviewed LLC documents; memo to FAM re same. | 1.00 | 250.00 |
| | | SERVICES RENDERED | 9.30 | $ 2,420.50 |

| | | |
|---|---|---|
| DISBURSEMENTS: | | |
| Photocopies | | 23.20 |
| Long Distance | | 2.87 |
| Lexis Research Expense | | 131.50 |
| DISBURSEMENTS | $ | 157.57 |
| TOTAL | *RNA* $ | 2,578.07 |

09/13/04 MON 16:07 FAX 1308       SFNR                                    ☒008

# *Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 · FAX 312/648-1212

TAXPAYER ID# 36-2839639

| | | |
|---|---|---|
| RNA          FAM | SEPTEMBER 01, 2004 PAGE    4 | |
| RNA Corporation | REF NO.   671382 | |

## RECAP OF FEES BILLED

| | | | |
|---|---|---|---|
| Frederic A. Mendelsohn | 4.40 Hrs | 285.00/Hr | 1,254.00 |
| Leonard J. Gambino | 1.00 Hrs | 250.00/Hr | 250.00 |
| Trent P. Cornell | 3.90 Hrs | 235.00/Hr | 916.50 |
| TOTAL | 9.30 Hrs | $ | 2,420.50 |

MINN Minnetonka Brands Inc.

| | | |
|---|---|---|
| DISBURSEMENTS: | | .61 |
| Long Distance | | |
| DISBURSEMENTS | $ | 0.61 |
| TOTAL | $ | 0.61 |

MOST Most Products, Inc.

| | | | | |
|---|---|---|---|---|
| 08/23/04 | DK | Prepare complaint against Most Products; convert to federal complaint; research on fraud; research jurisdictional issues regarding Thomasma. | 2.40 | 420.00 |
| | FAM | Draft complaint; analyze documents; conference with DSK regarding necessary research. | 3.90 | 1,111.50 |
| 08/24/04 | DK | Research jurisdictional issues and personal liability for fraud. | .50 | 87.50 |
| | FAM | Further revisions and edits to complaint; conference regarding same. | .40 | 114.00 |
| 08/26/04 | FAM | Conference with John Harms regarding draft complaint against Most Products and its president; revise and edit same; transmit same to client. | 1.40 | 399.00 |
| | FAM | Revise and edit complaint; transmit same to client. | .50 | 142.50 |
| | | SERVICES RENDERED | 9.10 $ | 2,274.50 |

DISBURSEMENTS:

*Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 · FAX 312/648-1212

TAXPAYER IDF 30-2039520

RNA          FAM                          SEPTEMBER 01, 2004 PAGE    5
RNA Corporation                           REF NO.   671382

        Photocopies                                            2.60

                        DISBURSEMENTS              $            2.60

                                TOTAL        RNA $        2,277.10

RECAP OF FEES BILLED

| | | | |
|---|---|---|---|
| Dan Klapman | 2.90 Hrs | 175.00/Hr | 507.50 |
| Frederic A. Mendelsohn | 6.20 Hrs | 285.00/Hr | 1,767.00 |
| TOTAL | 9.10 Hrs | $ | 2,274.50 |

                        TOTAL BALANCE DUE          $   11,664.91

                    ALL AMOUNTS BILLED ARE DUE
                    AND PAYABLE WITHIN 30 DAYS

| CURRENT | 1 MONTH | 2 MONTH | 3+ MONTH |
|---|---|---|---|
| 6,701.88 | 4,621.90 | 341.13 | |

*Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA • CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 • FAX 312/648-1212

TAXPAYER ID# 36-2839529

RNA      FAM                    OCTOBER 01, 2004     PAGE    5
RNA Corporation                  REF NO.   671702

RECAP OF FEES BILLED

| | | | |
|---|---|---|---|
| Frederic A. Mendelsohn | 1.30 Hrs | 285.00/Hr | 370.50 |
| TOTAL | 1.30 Hrs | $ | 370.50 |

MOST Most Products, Inc.

| Date | | Description | Hrs | Amount |
|---|---|---|---|---|
| 09/01/04 | DK | Research elements of complaint (8/31). | .50 | 87.50 |
| | DK | Research consumer fraud act and promissory fraud. | 2.60 | 455.00 |
| 09/02/04 | DK | Research promissory fraud. | .50 | 87.50 |
| 09/03/04 | DK | Research consumer fraud and promissory fraud. | .70 | 122.50 |
| 09/13/04 | DK | Research consumer fraud, fiduciary standard doctrine, promissory fraud; prepare memo regarding same; prepare complaint. | 4.90 | 857.50 |
| | FAM | Review and conference regarding case status and strategy; dictate status report to client. | .30 | 85.50 |
| 09/14/04 | DK | Research and prepare complaint. | 3.80 | 665.00 |
| 09/15/04 | FAM | Revise and edit complaint; review research memo; prepare same for filing. | .90 | 256.50 |
| 09/17/04 | DK | Finalize complaint, prepare for filing. | .40 | 70.00 |
| | LC | Filed motion in Federal Court | .50 | 15.00 |
| 09/27/04 | FAM | Conference and follow-up with process server and check case status. | .30 | 85.50 |

SERVICES RENDERED           15.40   $    2,787.50

DISBURSEMENTS:
Photocopies                       58.80
Lexis Research Expense         428.50

DISBURSEMENTS        $     487.30

TOTAL                ($)   3,274.80

RNA

*Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 · FAX 312/648-1212

TAXPAYER ID# 36-2839529

RNA      FAM                            OCTOBER 01, 2004   PAGE  6
RNA Corporation                          REF NO.  671702

RECAP OF FEES BILLED

| | | | |
|---|---|---|---|
| Dan Klapman | 13.40 Hrs | 175.00/Hr | 2,345.00 |
| Frederic A. Mendelsohn | 1.50 Hrs | 285.00/Hr | 427.50 |
| Law clerk | 0.50 Hrs | 30.00/Hr | 15.00 |
| TOTAL | 15.40 Hrs | $ | 2,787.50 |

TOTAL BALANCE DUE      $  18,386.53

ALL AMOUNTS BILLED ARE DUE
AND PAYABLE WITHIN 30 DAYS

| CURRENT | 1 MONTH | 2 MONTH | 3+ MONTH |
|---|---|---|---|
| 6,721.62 | 6,701.88 | 4,621.90 | 341.13 |

*Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 · FAX 312/648-1212

TAXPAYER ID# 36-2839529

RNA          FAM                                    NOVEMBER 01, 2004   PAGE    3
RNA Corporation                                     REF NO.   672129


                              TOTAL                        $        57.00
                                                               _____


RECAP OF FEES BILLED
_____

Frederic A. Mendelsohn          0.20 Hrs   285.00/Hr          57.00

TOTAL                           0.20 Hrs            $         57.00


MOST Most Products, Inc.
_____

10/05/04 FAM Review case status and status report to        .30        85.50
             client.
         LC  Filed return of service in U.S. District court .50        15.00
10/21/04 FAM Follow-up regarding case status; preparation   .30        85.50
             of default judgment and related matters.
10/22/04 DK  Research and prepare motion for default;      3.20       560.00
             telecon with client; review damage issues;
             office conference with FAM; e-mail to client;
             prepare affidavit regarding same.
         FAM Review, conference and strategy regarding       .40       114.00
             default judgment.
         TD  Research re: case status                        .20        18.00
10/28/04 DK  Review file; e-mail to John Harms regarding     .30        52.50
             declarations, status of invoices and
             relationship with Most Products.
                                                            _____   _____
                    SERVICES RENDERED                       5.20   $   930.50

                    DISBURSEMENTS:
                    Photocopies                                          4.60
                    Federal Express                                     18.10
                    Long Distance                                        1.50
10/06/04            Dictation; review of master lease; final revis     103.00

                    DISBURSEMENTS                                  $    127.20

                         TOTAL                                    $   1,057.70
                                                                     _____

*Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 · FAX 312/648 1212

TAXPAYER ID# 36-2839529

| | | | |
|---|---|---|---|
| RNA | FAM | NOVEMBER 01, 2004 | PAGE 4 |
| RNA Corporation | | REF NO. 672129 | |

RECAP OF FEES BILLED

| | | | |
|---|---|---|---|
| Dan Klapman | 3.50 Hrs | 175.00/Hr | 612.50 |
| Frederic A. Mendelsohn | 1.00 Hrs | 285.00/Hr | 285.00 |
| Law clerk | 0.50 Hrs | 30.00/Hr | 15.00 |
| Tom Dorsey | 0.20 Hrs | 90.00/Hr | 18.00 |
| TOTAL | 5.20 Hrs | $ | 930.50 |

TOTAL BALANCE DUE         $  11,359.01

ALL AMOUNTS BILLED ARE DUE
AND PAYABLE WITHIN 30 DAYS

| CURRENT | 1 MONTH | 2 MONTH | 3+ MONTH |
|---|---|---|---|
| 1,728.08 | 6,142.07 | 3,488.86 | |

## Schoenberg, Fisher, Newman & Rosenberg, Ltd.

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 · FAX 312/848-1212

TAXPAYER ID#36 2839529

RNA          FAM                              DECEMBER 01, 2004   PAGE   2
RNA Corporation                              REF NO.   672403

RECAP OF FEES BILLED

| FLAT FEE CHARGES | | | 150.00 |
|---|---|---|---|
| TOTAL | 0.00 Hrs | $ | 150.00 |

MOST Most Products, Inc.

| 11/01/04 | DK | Email client; review declaration regarding current and past status of invoices (10/29). | .20 | 35.00 |
|---|---|---|---|---|
| 11/05/04 | DK | Review file; email to client; revise default motion to "no amount certain." | .50 | 87.50 |
| | FAM | Conference regarding default judgment, status; draft status report to client (including time on 11/4). | .40 | 114.00 |
| 11/11/04 | DK | Review email from J. Harms, reply; review invoice. | .50 | 87.50 |
| 11/19/04 | DK | Telephone conference with John Harms of RNA regarding invoices for unique chemicals; review file. | .40 | 70.00 |
| | | SERVICES RENDERED | 2.00 $ | 394.00 |

TOTAL  $ 394.00

RECAP OF FEES BILLED

| Dan Klapman | 1.60 Hrs | 175.00/Hr | 280.00 |
|---|---|---|---|
| Frederic A. Mendelsohn | 0.40 Hrs | 285.00/Hr | 114.00 |
| TOTAL | 2.00 Hrs | $ | 394.00 |

TOTAL BALANCE DUE          $   3,311.50

ALL AMOUNTS BILLED ARE DUE
AND PAYABLE WITHIN 30 DAYS

| CURRENT | 1 MONTH | 2 MONTH | 3+ MONTH |
|---|---|---|---|
| 547.22 | 1,561.50 | 1,202.78 | |

*Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2000 · FAX 312/648-1212

TAXPAYER ID# 36-2832628

JANUARY 03, 2005
REF NO. 672893

RNA
RNA Corporation
13750 South Chatham
Blue Island, IL 60406

BALANCE BROUGHT FORWARD

| | | | |
|---|---|---|---|
| 12/30/04 | Payment | $ | 3,311.50 |
| | | | 3,311.50- |
| | TOTAL BALANCE BROUGHT FORWARD | | |
| | | $ | 0.00 |

SERVICES RENDERED:

GEN  General

DISBURSEMENTS:

| | | |
|---|---|---|
| Photocopies | | 4.00 |
| Long Distance | | .12 |
| DISBURSEMENTS | $ | 4.12 |
| TOTAL | $ | 4.12 |

MOST Most Products, Inc.

| | | | | | |
|---|---|---|---|---|---|
| 12/13/04 | DK | Email to FAM; telecon to John Harms. | .30 | | 52.50 |
| | FAM | Follow-up as to motion for default. | .20 | | 57.00 |
| | | SERVICES RENDERED | .50 | $ | 109.50 |
| | | TOTAL | | $ | 109.50 |

RECAP OF FEES BILLED

| | | | | |
|---|---|---|---|---|
| Dan Klapman | 0.30 Hrs | 175.00/Hr | | 52.50 |
| Frederic A. Mendelsohn | 0.20 Hrs | 285.00/Hr | | 57.00 |
| TOTAL | 0.50 Hrs | | $ | 109.50 |

*Schoenberg, Fisher, Newman & Rosenberg, Ltd.*

SUITE 2100

222 SOUTH RIVERSIDE PLAZA · CHICAGO, ILLINOIS 60606-6101

TELEPHONE 312/648-2300 · FAX 312/648-1212

TAXPAYER ID# 36-2838829

RNA
RNA Corporation

JANUARY 03, 2005    PAGE    2
REF NO.   672893

TOTAL BALANCE DUE           $       113.62
                                    ===========

ALL AMOUNTS BILLED ARE DUE
AND PAYABLE WITHIN 30 DAYS

| CURRENT | 1 MONTH | 2 MONTH | 3+ MONTH |
|---------|---------|---------|----------|
| 113.62  |         |         |          |

cn

Fri Sep 17 15:24:40 2004

UNITED STATES DISTRICT COURT

CHICAGO        , IL

Receipt No.      106 31612
Cashier           davidj

Check Number: 88191

DO Code      Div No
4624           1

Sub Acct Type Tender      Amount
1:510000   N     2          90.00
2:086900   N     2          60.00

Total Amount         $    150.00

ER   NEW CASE  04CV6070  SCHOENBERG FISH

cn

**2**

RECYCLED PAPER
RECYCLED

## Prejudgment Interest Due and Owing to RNA Corporation

| Invoice | Invoice Date | Invoice Amount | Per Day Interest (at annual rate of 5%) | Interest Owed As Of March 17, 2005 |
|---------|--------------|----------------|------------------------------------------|-------------------------------------|
| 29166 | 30-Sep-03 | $30,206.11 | $4.14 | $2,193.05 |
| 29311 | 12-Dec-03 | $1,906.50 | $0.26 | $119.35 |
| 29312 | 12-Dec-03 | $7,064.78 | $0.97 | $442.27 |
| 29313 | 12-Dec-03 | $23,976.00 | $3.28 | $1,500.96 |
| 29401 | 10-Feb-04 | $14,368.12 | $1.97 | $781.39 |
| | | | Total: | $5,037.03 |